James A. HAIRSTON, Plaintiff,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

C.A. No. 85–2815.

United States District Court, District of Columbia.

June 25, 1986.

Wiley Branton, Jr., Peggy Miller, Washington, D.C., for plaintiff.

Richard S. Love, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The plaintiff, James A. Hairston, is a career member of the District of Columbia Metropolitan Police Department ("MPD" or "Department"). He filed this action seeking monetary, declaratory and injunctive relief, claiming that the District of Columbia, Mayor Marion Barry, Captain Maurice Turner of the D.C. Police Department, and four other government officials violated his rights under 42 U.S.C. §§ 1983, 1985, and the Fourteenth Amendment. Plaintiff also seeks an award of attorneys fees under 42 U.S.C. § 1988 and asserts a pendent state law claim for intentional infliction of emotional distress. Defendants filed a motion to dismiss the complaint. Because the parties relied on matters outside the pleadings, the Court elected to treat the motion as one for summary judgment, and ordered the parties to supplement their filings accordingly.

After a thorough review of the motions, supporting memoranda and exhibits, the Court concludes that summary judgment must be granted on Counts I, II, and III, and that Counts IV and V must be dismissed.

## BACKGROUND

On October 12, 1981, while working at his off-duty job, plaintiff shot and killed Adam Tyree Boyd, Sr. in the course of an altercation. Plaintiff's allegations in the present suit stem from the various administrative actions taken by the Police Department in connection with the shooting.

Initially, plaintiff requested administrative sick leave for a performance-of-duty injury in October of 1981 based on the injuries inflicted by Boyd. "Administrative" sick leave is to be distinguished from regular sick leave: the former is not chargeable to an officer's annual allotment of paid sick leave, and thus can ensure economic security for a long period of time to officers injured in the line of duty. *E.g.*, D.C.Code § 1–613.3(j); MPD General Order 1001, Def. Exh. P. The Department denied his request on December 18, 1981, determining that the injuries were not incurred in the performance of duty and informing him of his right to appeal. Def. Exh. B. Plaintiff's appeal was acknowledged on January 28, 1982, but no hearing was scheduled until October 4, 1985, allegedly because of the ongoing criminal proceedings. Def. Exh. D, E. Plaintiff received written and oral notice of the October hearing of his appeal, but did not attend the hearing, thinking that it pertained to a later request for leave. *See* Pltf. Exh. 1; 3. The original denial, based on the non-duty-related nature of plaintiff's injuries, was affirmed, and no appeal was taken. Pltf. Exh. 4.

In May of 1982, Adam Boyd's widow brought a wrongful death action in District of Columbia Superior Court against the District of Columbia and James Hairston. District of Columbia Corporation Counsel declined to represent Hairston in this civil action, reasoning that the possibly inconsistent defenses raised by Hairston and the District created a conflict of interest. Pltf. Exh. 15; 16. Plaintiff contends that section 4–143 of the District of Columbia Code guarantees this representation, or at least requires payment of attorneys fees in connection with his defense.[1] To date, no attorneys fees have been paid, and the case is still pending in Superior Court.

On January 23, 1983 plaintiff was indicted in D.C. Superior Court in the death of Adam Boyd for Voluntary Manslaughter While Armed. The first trial of this matter ended in a mistrial, on June 16, 1984. Following a second trial, plaintiff was acquitted on September 19, 1984. Plaintiff had been suspended from work without pay by order of defendant Chief Turner on March 31, 1983, pending the outcome of the criminal matter. Such suspension is authorized under D.C.Code § 4–117, which gives the Mayor the authority to "fine, suspend with or without pay, and dismiss any officer ... [of the] police force for any offense against the laws of the United States or the laws and ordinances or regulations of the District of Columbia, whether before or after conviction thereof in any court or courts...." Plaintiff received the proposed notice of suspension on February 24, 1983, and exercised his right to reply with the aid of counsel. Def. Exh. H; I. The Department's final decision issued March 31, 1983, suspending plaintiff as of April 13, 1983. Def. Exh. I. The notice in-

---

1. D.C.Code § 4–143 provides:

    Legal assistance for police in wrongful arrest cases.

    (a) In accordance with regulations prescribed by the Council of the District of Columbia, the Corporation Counsel of the District of Columbia shall represent any officer or member of the Metropolitan Police Department, if he so requests, in any civil action for damages resulting from an alleged wrongful arrest by such officer or member.

    (b) If the Corporation Counsel fails or is unable to represent such officer or member when requested to do so, the Mayor of the District of Columbia shall compensate such officer or member for reasonable attorney's fees (as determined by the court) incurred by him in his defense of the action against him.

formed plaintiff of his right to appeal the decision to the Office of Employee Appeals, within 15 days, Def. Exh. I, pursuant to the procedural protection provided in Article 13 of the Labor Agreement between the District and the MPD. Def. Exh. Q, Art. 13, § 8. *See also* D.C.Code § 1–617.3(d). An adverse decision by OEA would have been appealable to the District of Columbia Superior Court. D.C.Code § 1–606.3(d) (1981). Plaintiff did not appeal his suspension to OEA within 15 days.

On September 21, 1984, plaintiff was reinstated pursuant to Article 13, § 11 of the Labor Agreement then in force. Def. Exh. Q. Plaintiff's request for back pay for the period of March 31, 1983 to September 20, 1984 was denied by Captain Turner on October 19, 1984, pursuant to department policy.[2] Pltf. Exh. 8. Plaintiff's appeal of this decision, filed on October 23, 1984, is presently pending before OEA.

Plaintiff's final contentions involve the administrative review of his service weapon use in the shooting of Adam Boyd. Police use of service weapons is subject to a two-step administrative investigation to ensure conformance with MPD regulations. *See* MPD General Order 901.1, Def. Exh. J. Each incident is subject to an immediate preliminary investigation, and a subsequent, more thorough administrative investigation. *Id.* The findings are forwarded to the Chief of Police, and must include any recommendations for disciplinary action, if appropriate. *Id.*, Part III. The Chief then may refer the incident to the Use of Service Weapon Review Board ("USWRB") for a recommendation of whether adverse action should be taken. MPD General Order 201.7, Part I–A.4, Def. Exh. L. Adverse findings may be appealed to the Appeals Board. *Id.*, Part I–F. Officers have a right to appear before the USWRB and the Appeals Board, and the resultant findings are to be submitted to the Chief of Police once the appeal is resolved. Membership of the Board is established by the General Order. If the Board recommends adverse

action, and the Chief of Police concurs, no action may be taken until written charges are issued by the Chief and the matter is heard by a Police Trial Board. D.C.Code §§ 4–117, –118; Def. Exh. O. Trial Board findings may be appealed to the Mayor, *id.*, and thence to the OEA and Superior Court. D.C.Code § 1–606.3.

The initial investigative report issued October 13, 1981, by the Police Department, Sixth District, recommended a finding that plaintiff's use of his gun was justified. Once plaintiff was indicted, the administrative investigation was stayed, and did not resume until his acquittal in late September, 1984. The administrative investigative report was completed and sent to Chief Turner along with the initial report on December 10, 1984. On February 6, 1985, the USWRB convened at Chief Turner's request to review the reports and to make a recommendation to the Chief of Police regarding plaintiff's use of his weapon. Def. Exh. L. Plaintiff had not received notice of this meeting and the Appeals Board vacated the USWRB's findings, setting a second meeting for March 27, 1985. Def. Exh. M. Plaintiff failed to appear at the hearing, although he and counsel had notice. The USWRB found that his use was unjustified, and recommended adverse action. Def. Exh. N.

Plaintiff challenges the USWRB's March finding, claiming that it was first made at the February proceeding, since the same officials composed both Boards: defendants Gibson, Maiden and Brooks. Plaintiff also notes that Gibson, Maiden and Brooks issued a written denouncement of the District's investigative report on March 6. He states that Gibson, Maiden and Brooks, along with Carl Profater, the Assistant Chief of Police who administers USWRB proceedings, withheld evidence from plaintiff and the Police Department District investigators.

Plaintiff appealed the Board's finding on April 18, 1985. The Appeals Board was scheduled to hear the USWRB's recommen-

---

**2.** An earlier request for reinstatement, following the mistrial, had been denied, pending further prosecution of the criminal action. Plaintiff does not seek review of this earlier decision.

dation on September 28, 1985. An initial hearing, set in August, had been cancelled. Plaintiff had objected to the presence of a member of the Police Department union on the August Appeal Board, because of litigation spawned by the union's publication and distribution of a flyer in March, 1983 regarding the shooting of Adam Boyd.[3] The appeals hearing has been re-scheduled several times, but has not been held. Thus, no recommendation has been made to Chief Turner. No final decision has been made by Chief Turner in this matter, and no adverse action has been taken against plaintiff based on his use of his service weapon. Plaintiff was returned to full duty status in January, 1985, and was subsequently requalified to use his service weapon.

## DISCUSSION

Plaintiff claims that the denial of sick leave, back pay, representation or attorneys fees in the wrongful death action, and the administrative review of his service weapon use have deprived him of his constitutionally protected property and liberty interests, in violation of the fourteenth amendment's due process guarantee, 42 U.S.C. § 1983 and § 1985.[4] Plaintiff also claims under local tort law that defendants' actions have caused him severe mental and emotional stress and seeks attorneys fees under § 1988.

### I. *Violations of 42 U.S.C. § 1983 and Due Process*

The threshold issue is whether any of the interests plaintiff asserts are sufficient to implicate the due process requirements of the Constitution.

### A. *Administrative Sick Leave*

■ Plaintiff contends that he has a property interest in administrative sick leave, stemming from District of Columbia law, which grants administrative leave to officers suffering injuries or illness "related to the performance of duty." D.C.Code § 1–613.3(j). This interest is supplemented by Police Department regulations that establish a review procedure to determine an officer's eligibility for administrative leave. *See* MPD General Order 1001, Def. Exh. P. Property interests under the Constitution "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. To have a property interest in a benefit, a person clearly ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Under the principles of *Roth,* the District of Columbia's statutory administrative sick leave scheme has been found to create a property interest in the continued receipt of administrative sick leave. *District of Columbia v. Jones,* 442 A.2d 512, 517 (D.C. App.1982) (officer on administrative sick leave entitled to due process prior to deprivation). Plaintiff, however, was merely an applicant for leave, and there was no administrative determination that he in fact met the condition necessary to receive leave. When a benefit is conditional, and the claimant has not shown that the factual predicates to its receipt exist, his claim does not ripen into a "legitimate entitlement" to property under the Constitution. To otherwise expand the concept of "property" would permit any pretender to invoke

---

**3.** The District of Columbia Superior Court had affirmed the administrative finding by the Public Employee Relations Board ("PERB") that the union's issuance of the flyer violated Standards of Conduct. The union's appeal of this decision is presently pending in the District of Columbia Court of Appeals. In addition, plaintiff filed a defamation action in Superior Court in March, 1984 against the union and others, based on statements made in the flyer. This action is still pending.

**4.** The fourteenth amendment does not apply to the District of Columbia. *See, e.g., Osgood v. District of Columbia,* 567 F.Supp. 1026 (D.D.C. 1983). The Court shall treat plaintiff's claims as though they were made under the fifth amendment, in keeping with the liberal rules of pleading followed in this Circuit.

the Constitution on behalf of his claim, depriving the Due Process guarantee of weight and of meaning. Case law does not support such an expansion. Thus, although due process would be required to deprive a qualified officer of administrative sick leave, when an officer has failed to demonstrate that he satisfied the statutory conditions of the leave, he has no constitutionally protectible property interest therein. Absent such a determination, plaintiff does not have a "legitimate claim of entitlement" to the leave.

Plaintiff's claim is not enhanced by his challenge to the Department's factual conclusion that his October 1981 injuries were not duty-related. Channels of administrative review exist to review that decision. Having failed to pursue timely administrative relief, plaintiff cannot now obtain judicial determination of his injury status in the guise of a constitutional claim. Thus, because plaintiff was not placed on administrative sick leave for his October 1981 injuries, and because he was found not to meet the threshold qualifications for leave, he has not established a constitutional property interest in the leave.

Even if he could be found to have a protectible interest in the sick leave, he was given notice of the denial of his claim, and an opportunity for a hearing to challenge the denial. In challenging the adequacy of this process, plaintiff contends only that he misunderstood the purpose of the hearing, and, thinking it related to a later benefit claim, elected not to attend. The deficiency in the process accorded—if any—lies not with defendants, but with plaintiff's election to waive his opportunity to present his claims. Accordingly, plaintiff's claims under the Due Process Clause or §§ 1983 or 1985, based on the denial of administrative sick leave, must be dismissed.

B. *Representation or Fees in the Wrongful Death Suit*

■ Plaintiff's alleged property interest in representation or attorneys fees is based on D.C.Code § 4–143. It is undisputed that the civil action at issue is for the wrongful death of Adam Boyd, based not on his wrongful arrest, but on plaintiff's excessive use of force in the off-duty encounter. As with his claim for administrative leave, plaintiff cannot show that he meets the statutory factual predicates for the benefit he seeks. Since he has no legitimate claim of entitlement to any benefit under § 4–143, he has no property interest therein to which the guarantees of due process attach.

C. *Service Weapon Use Review*

■ This claim centers on the administrative review of plaintiff's use of his service weapon in the shooting of Adam Boyd. The Weapons Review Board found the use to be unjustified, and the administrative appeal of this decision is still pending. Only the Chief of Police can initiate adverse action against plaintiff for the use of his weapon, and no recommendation will be made to the Chief until the pending administrative appeal is resolved. Thus, plaintiff has not been deprived of any employment related benefits because of the Board's review, nor has he been dismissed, demoted or suspended.

The procedural scheme for review of weapons use may assist plaintiff in establishing a property interest in his employment, such that action affecting his employment status and based on his weapon use could not be taken summarily, without due process. Plaintiff cannot, however, establish a property interest in the review process alone. The procedural deficiencies plaintiff catalogues in the administrative review of his weapon use do not rise to the level of a constitutional claim, since the review has not affected an interest of constitutional dimension. Although the existing adverse finding by the Board may in some respects damage plaintiff's reputation, it is generally held that mere injury to reputation is not a deprivation of a constitutionally protected interest. *E.g., Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■ Plaintiff also states that the Board's review represents selective, malicious prosecution. It is not clear whether a common-law claim of malicious prosecution rises to a constitutional claim of violation of due process under § 1983 if it is not accompanied by a claim of substantive constitutional deprivation. *Compare Sami v. United States*, 617 F.2d 755, 773–74 (D.C.Cir.1979) (citing with approval cases dismissing such § 1983 actions) with *Dellums v. Powell*, 490 F.Supp. 70, 72–73 (D.D.C.1980) (elements of common law malicious prosecution tort make out claim under § 1983 for deprivation of liberty without due process). Even assuming plaintiff could assert a liberty interest deprivation, he cannot at this time establish the necessary elements of malicious prosecution. District of Columbia law requires a plaintiff to prove: (1) malicious institution of a civil or criminal action,[5] (2) without probable cause, (3) which terminated in favor of the defendant therein and (4) which caused the defendant's arrest, or seizure of his property, or a "special injury to the defendant which would not necessarily result in suits prosecuted to recover for like causes of action." *Weisman v. Middleton*, 390 A.2d 996, 1002 (D.C.App.1978). Plaintiff does not contest that defendants had sufficient "cause" to initiate administrative review. Further, the proceedings have not terminated in plaintiff's favor, and have not effected the requisite arrest, seizure or special injury. *See e.g. Mazanderan v. McGranery*, 490 A.2d 180, 181 (D.C.App.1984) ("pain and distress of mind and body ... do not rise to the level of special injury" in a malicious prosecution claim).

The delay in the administrative review of plaintiff's weapon use gives the Court some concern. It is now nearly five years after the shooting incident, and plaintiff has no final Departmental determination of the propriety of his decision to use his weapon. Surely the internal review process was established as much to give uniformed officers guidance in their weapon use, as it was to ensure compliance with Departmental standards of conduct. Although the Court does not see that an injury of constitutional dimension has been produced by this sluggish review, continued delay may well work to plaintiff's detriment and inflict some loss against which the Constitution guards.[6] At this point, however, there is no such injury.

Thus, since plaintiff has failed to establish any injury of constitutional dimensions resulting from the Board's actions, his claims for relief based on the USWRB review must be dismissed.

### D. *Back Pay*

■ Plaintiff was suspended without pay, based upon his indictment for manslaughter, from March 31, 1983 until his acquittal on September 20, 1984. Although he was immediately reinstated following his acquittal, his request for back pay and benefits for the period of his suspension was denied pursuant to Department policy. Pltf. Exh. 8. The appeal he filed with the Office of Employee Appeals on October 31, 1984 over this denial is still pending. Plaintiff claims that the denial of his request deprived him of a protected property right in his back pay.

Plaintiff claims that the Back Pay Act, 5 U.S.C. § 5596, secures his entitlement to pay for the period of his suspension, since

---

5. It is not clear whether an administrative, disciplinary review procedure can be the subject of a malicious prosecution claim in the District of Columbia. *E.g., Kerpelman v. Bricker*, 23 Md. App. 623, 329 A.2d 423, 427–28 (1974) (disciplinary proceeding against attorney for professional misconductd lacks essential element of cause of action for malicious prosecution, or its civil analogue). *But see Mazanderan v. McGranery*, 490 A.2d 180 (D.C.App.1984) (court assumed, without deciding, that civil complaint to Hacker's License Appeal Board could be the basis of

a malicious prosecution claim). Because the Court finds plaintiff's claim to be otherwise deficient, it need not resolve this issue.

6. The record indicates that some of the delay may have been at plaintiff's request. If so, this would erode the strength of his claim that the process defendants have provided is deficient because it is delayed. At this stage, because no property or liberty right has been affected, the Court need not resolve this issue.

he was acquitted of the criminal charge upon which his suspension was based. The District of Columbia Comprehensive Merit Personnel Act, D.C.Code § 1–601.1 *et seq.*, made the Back Pay Act inapplicable to District employees as of September 26, 1980. *See* D.C.Code § 1–633.2(a)(5)(G); *see generally District of Columbia v. Merit Systems Protection Board,* 762 F.2d 129, 131 n. 1 (D.C.Cir.1985) (noting present supercession of Back Pay Act); *Brown v. Jefferson,* 451 A.2d 74, 74 n. 1 (D.C.App. 1982) (noting supercession of 5 U.S.C. § 6324 as to uniformed District employees). Clearly, plaintiff cannot acquire any property interest thereunder. Local law does not provide an analogous right to back pay, and the labor agreement in effect at the time, while providing for immediate reinstatement in such circumstances, is silent as to back pay. Def. Exh. Q, Article 13, § 11. Thus, plaintiff has no cognizable property interest in back pay for the period of his suspension.

■ Plaintiff also appears to claim a property right to pay for this period by challenging the propriety of his initial suspension. Local law sets forth the bases for suspending an officer without pay, D.C. Code §§ 4–117, 1–617.1(d)(10),[7] which may be sufficient to create a protectible property interest in the continued receipt of pay.

Assuming plaintiff had a property interest in pay duty status, the Court's inquiry then shifts to determine what process was provided, and what process was due under the Constitution. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Plaintiff's challenge, however, is to the substance of the Department's decision, rather than to the adequacy of the process by which it was implemented. He does not contest that he was indicted, nor that he had a hearing prior to his suspension. He makes no claim that this hearing was inadequate.

He was not suspended until after notice and a hearing, and was informed that he had until April 18, 1983 to appeal his suspension to the Office of Employee Appeals ("OEA"). Def. Exh. I; *see* D.C.Code § 1–617.1(c) (1981); *Harris v. Barry,* slip op. at 3 (D.C.App. Dec. 13, 1985) (discusses appeals procedure). Any adverse decision by OEA would have been subject to review by the District of Columbia Superior Court. D.C.Code § 1–606.3(d) (1981). Plaintiff did not appeal his initial suspension, and thus failed to avail himself of the opportunity provided to protect his property interest. The resultant deprivation is an injury which must lie at plaintiff's own feet. He does not contest the adequacy of the process afforded by this statutory route. The guarantee of Due Process is not intended to provide additional substantive review of a property deprivation unless the relevant procedure was allegedly deficient. Thus, since he suffered no injury of constitutional dimensions in his initial suspension without pay, and since he has no constitutionally protectible property interest in back pay for that period, his claims under the Due Process Clause and § 1983 must be dismissed.

## II. *Violation of 42 U.S.C. § 1985(3)*

■ Defendants have moved to dismiss plaintiff's claim under § 1985(3) for failure to state a cause of action. To come within the statute, plaintiff's complaint must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen

---

**7.** D.C.Code § 1–617.1(d)(10) provides that "cause" for adverse action, including suspension without pay, is:

Conviction of a felony. A plea or verdict of guilty, or a conviction following a plea of nolo contendere, to a charge of a felony is deemed to be a conviction within the meaning of this section. Notwithstanding the foregoing, cause under this paragraph with regard to uniformed members of the Metropolitan Police Department is deemed to be the commission of any act which would constitute a crime.

of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971); *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C.Cir.1984). Whatever the other deficiencies of plaintiff's complaint, the foregoing analysis demonstrates that he fails on the fourth element. It is well settled that § 1985(3) " 'provides no substantial rights itself' to the class conspired against." *United Brothers of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983) *("Scott")*, quoting *Great American Fed. S & L Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). Rather, "[t]he rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere." *Scott*, 103 S.Ct. at 3358. Plaintiff asserts deprivations of property and liberty interests, created by District of Columbia and federal laws, and secured by the Due Process Clause. Complaint ¶¶ 98–100. The Court has already concluded that plaintiff has no property or liberty interest based on his claims to back pay, sick leave, weapon use review or representation in the wrongful death action. Hence he can have suffered no injury to or deprivation of these interests from any conspiracy unlawful under § 1985(3), and he alleges no other deprivations. In addition, the Court notes that the claim of conspiracy lacks the factual detail necessary to withstand a motion to dismiss. *See e.g. Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir.1982) (conclusory allegations are insufficient to establish conspiracy under § 1985). Accordingly, Count II must be dismissed.

### III. § 1988 and Intentional Tort Claim

■ The remaining counts must be dismissed as well. 42 U.S.C. § 1988 defines the procedures which must be followed to obtain remedies in civil rights cases; it creates no independent cause of action. *E.g., Estes v. Tuscaloosa County*, 696 F.2d 898 (11th Cir.1983). Further, since plaintiff's federal claims are no longer before the Court, the Court lacks power under Article III to adjudicate the pendent claim for intentional infliction of emotional distress. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Doe v. Board on Professional Responsibility*, 717 F.2d 1424 (D.C.Cir.1983). Thus, Count V must be dismissed.